UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

TD BANK, N.A.                                   :
                                                :
        v.                                      :     C.A. No. 12-647S
                                                :
NICHOLAS E. CAMBIO, VINCENT A.                  :
CAMBIO, LINDA J. MALAFRONTE,                    :
solely in her capacity as Co-Executrix          :
of the ESTATES OF RONEY A.                      :
MALAFRONTE, and ROBIN                           :
PELLECCIONE, solely in her capacity             :
as Co-Executrix of the ESTATES OF               :
RONEY A. MALAFRONTE                             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) is Plaintiff's Motion for Summary Judgment Against Defendants Nicholas Cambio and Vincent Cambio. (Document No. 55). Defendants filed an Objection. (Document No. 62). A hearing was held on October 22, 2014. After reviewing the parties' submissions, listening to the arguments of counsel and reviewing relevant legal research, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED.

**Background**

On August 31, 2006, Nicholas Cambio and Vincent Cambio executed a Guaranty Agreement in favor of TD Bank, N.A. ("TD Bank") which guaranteed two Promissory Notes from Commerce Park Realty 2, LLC ("CPR") to TD Bank. (Document No. 57 at ¶ 4). Nicholas Cambio and Vincent Cambio were members of CPR at the time of the loan origination. Id. at ¶ 5.

The first Promissory Note was in the original principal amount of $1,580,000.00, and the second Promissory Note was in the original principal amount of $6,020,000.00. Id. at ¶ 1. Both Promissory Notes were later amended and restated on June 30, 2009 as follows: (a) the Promissory Note in the original principal amount of $1,580,000.00 was amended by an Amended and Restated Note in the amount of $115,000.00; and (b) the Promissory Note in the original principal amount of $6,020,000.00 was amended by an Amended and Restated Note in the amount of $1,100,000.00. Id. at ¶ 2. CPR defaulted on the Notes, as the Notes both matured on July 30, 2010, and the entire principal balance, all accrued and unpaid interest and all other amounts payable per the Notes became due and payable on that date. Id. at ¶¶ 3, 8. CPR failed to make its maturity payment and filed for Bankruptcy on January 3, 2012. Id. at ¶ 9.

The Guarantors "unconditionally and irrevocably" guaranteed the "punctual payment when due" of all principal, interest and other amounts due on the loan. The Guaranty states that it is a "continuing guaranty of payment and not a guaranty of collection." (Document No. 1-2 at p. 3). The Guaranty also states:

> Guarantor agrees that neither Lender's rights or remedies nor Guarantor's obligations under the terms of this Guaranty shall be released, diminished, impaired, reduced or affected by any one or more of the following events, actions, facts, or circumstances, and the liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of: ...any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Guaranteed Obligations....

(Document No. 1-2 at pp. 7-8, Section 5, Part x).

On March 5, 2014, TD Bank foreclosed on the seven condominium units that were collateral for the Notes and received gross proceeds of $552,000.00 from that sale. (Document No. 57 at ¶ 10). TD Bank allowed the sale of the remaining collateral unit on March 12, 2014 and received

$253,737.55 from that sale. Id. at ¶ 11. The total amount due on the Notes as of June 30, 2014, with a credit for the foreclosure sale proceeds, was $761,864.52. Id. at ¶ 12.

### A. Dismissal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

**B.     Discussion**

Defendants do not dispute liability or any of the underlying facts. Instead, Defendants contend that the sale of the collateral was not commercially reasonable, and they therefore contest the amount of damages sought by Plaintiff. In support of this defense, Defendants rely upon the Affidavits of Nicholas E. Cambio (Document No. 62-1 at p. 6) and Paul Mihailides (Document No. 62-1 at p. 25). Mr. Mihailides is the owner of MTM-CNE II, LLC ("MTM"), the company that paid $552,000.00 at a post-foreclosure auction for the seven condominium units that served as collateral for the loan transaction and guaranty at issue in this case. (Document No. 62-1 at pp. 6, 25). Following the foreclosure sale, Mr. Mihailides asserts that MTM invested $70,000.00 in construction costs to complete one of the condominium units. (Document No. 62-1 at p. 25). In the next five months, MTM sold six condominium units and entered into a Purchase and Sales Agreement for the seventh unit, for an aggregate sales price of $1,243,900.00. Id. at p. 7.

Mr. Mihailides' Affidavit notes that he offered to purchase the units prior to the foreclosure auction for $750,000.00 in cash, and $1,000,000.00 over time for the seven units, but that his offers were rejected. Id. at p. 25. Mr. Mihailides opines that the "units were sold at considerably less than market value." Id. In his Affidavit, Mr. Cambio notes that "MTM earned a gross profit on its

$552,000.00 investment of 225% in less than five months," and he opines that "Plaintiff's sale of these seven units was not commercially reasonable." Id. at pp. 7-8.

As accurately summed up by Plaintiff, Defendants' sole defense to the Motion for Summary Judgment is their claim that the underlying foreclosure sale was not commercially reasonable because the proceeds from that sale were not sufficient. (Document No. 65 at p. 2). After reviewing the arguments set forth by the parties, and as explained below, the Court finds that there are no genuine trialworthy issues presented by Defendants' claim that the foreclosure sale lacked commercial reasonableness, and I recommend that Plaintiff's Motion for Summary Judgment be granted.

First, the defense that the sale was not commercially reasonable fails because Section 5 of the Guaranty signed by Defendants contains an unequivocal and express waiver of the defense of commercial reasonableness. (Document No. 65 at pp. 2-3, citing Document No. 1-2 at pp. 7-8). The relevant portion of the Guaranty states that the "...liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of: ...any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Guaranteed Obligations..." (Document No. 1-2 at pp. 7-8). As noted, Defendants have not disputed the facts at issue, nor have they challenged the enforceability of this language or the Guaranty generally. There is no ambiguity in the phrasing of the waiver, and such provisions have been routinely enforced. See e.g., United States v. Mallett, 782 F.2d 302, 303 (1st Cir. 1986). The clear and unambiguous waiver of this defense contained in the Guaranty is enforceable and sufficient on its own to overcome Defendants' Objection to the Summary Judgment Motion.

However, even putting aside the express language in the Guaranty, this commercial unreasonableness defense also fails as a matter of law. In DeLuca v. Klegraefe, 706 A.2d 1351 (R.I. 1998), the Rhode Island Supreme Court considered a somewhat analogous appeal of a summary

-5-

judgment decision concerning a piece of property in Providence, Rhode Island. In that case, the property was secured by a first mortgage loan from Pawtucket Credit Union and a promissory note held by Plaintiff, secured by a second mortgage on the property and personally guaranteed by Defendant. DeLuca, 706 A.2d at 1351. After default, the property was foreclosed on, and Plaintiff purchased the property at public auction. The foreclosure sale was subject to the first mortgage, as well as unpaid real estate taxes. Plaintiff thereafter brought suit for the deficiency amount on the note and prevailed on a motion for summary judgment. Defendant appealed, arguing the property was not sold in a commercially reasonable manner, pointing to several recent appraisals on the property that far exceeded the auction price. The Supreme Court upheld the trial court's finding that inadequacy of price, on its own, is insufficient to establish a material issue of fact to warrant a trial. Id. Instead, the Court noted that it was "incumbent upon [Defendant] to produce evidence of collusion or other improprieties in connection with the advertisement or conduct of the sale that would have improperly deflated the foreclosure price." Id. In that case, Plaintiff was both the noteholder and the purchaser of the property, yet the Court still required Plaintiff to produce independent evidence of collusion or improprieties. Defendants in the present matter have not presented any evidence of collusion or impropriety on the part of TD Bank in connection with the foreclosure sale. TD Bank also notes that it was required, as mortgagee, to sell the units by way of foreclosure, and could not have accepted any offer allegedly made by Mr. Mihailides.[1] (Document No. 65 at p. 5). Defendants have simply failed to present any legally or factually viable defenses to Plaintiff's enforcement of the Guaranty in issue. Thus, Plaintiff is entitled to final judgment as a matter of law as to both liability and damages in the amount sought.

---

[1] Although Plaintiff accepts that Mr. Mihailides made an offer to purchase for purposes of this Motion, it denies that he ever made a formal offer to purchase. Plaintiff avers that the offer was solely verbal and never put in writing as it requested.

**CONCLUSION**

For the foregoing reasons, I recommend that Plaintiff TD Bank, N.A.'s Motion for Summary Judgment (Document No. 55) be GRANTED establishing liability in favor of Plaintiff as to Defendants Nicholas Cambio and Vincent Cambio jointly and severally in the amount of $761,864.52 plus prejudgment interest, reasonable attorneys' fees and costs. I also recommend that the Court direct Plaintiff to file a proposed form of Final Judgment as well as a properly supported petition for fees and costs.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 3, 2015